**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

ROSS LEVAY,

       *Plaintiff,*

       *v.*

UNITED STATES,
JEFF SESSIONS,
UNITED STATES ATTORNEY,
U.S. HOUE OF REPRESENTATIVE,
U.S. SENTATE,

       *Defendants.*
_____/

CASE NO. 17-cv-10517

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)**</u>

**I.**      <u>**RECOMMENDATION**</u>

For the reasons set forth below, **IT IS RECOMMENDED** that the case be *sua sponte* **DISMISSED** because Plaintiff lacks standing.

**II.**     <u>**REPORT**</u>

     **A.**     **Introduction**

Plaintiff Ross D. LeVay ("Plaintiff") filed this *pro se* suit against the United States on February 17, 2017. (Doc. 1) The same day, he applied for permission to proceed *in forma pauperis* ("IFP"), (Doc. 2), and his request was granted on February 23, 2017, (Doc. 6). On February 22, 2017, District Judge Thomas Ludington referred all pretrial matters to the undersigned Magistrate Judge on February 22, 2017. (Doc. 3).

1

Plaintiff begins his complaint with citation to an Islamic text which reads: "You will fight against the Jews and you will kill them until even a stone would say: Come here, Muslim, there is a Jew (hiding himself behind me); kill him." (Doc. 1 at 5). He indicates that he is Jewish and suggests that "Islamic motivated violent acts targeting Jews and our places of worship" constitute "a real and credible threat to my safety and security." (*Id.*). "This is no longer free exercise of religion." (*Id.*). He continues: "the Hadith[] and 164 Koranic verses specifically urge Muslims to violence, clearly and demonstrably an incitement to imminent lawlessness, cited by ISIS, Al Qaeda and sole-actors as Koranic justification for their crimes, which the Supreme [C]ourt has ruled not to be protected under the [First] Amendment." (*Id.*). In other words, he suggests these Islamic texts incite imminent lawless action, in accordance with *Brandenburg v. Ohio*, 395 U.S. 444 (1969), and thus may be punished without running afoul of the First Amendment. "I am Jew by birth, . . . Yet the Koran and Hadith call for my death. I am under fear of violence motivated by the Koran, with the real and concrete possibility that violence will occur. I have a Constitutional Right to Life. The Legislature has abdicated its responsibility to protect me from incitement of my death. I should not have to risk death in order to practice my faith, nor risk death in my refusal to convert to Islam, nor risk death for speaking out on this matter. Not in this country." (Doc. 1 at 7).

Alongside this general argument, he includes four discrete claims: (1) gross negligence "on behalf of the US Legislature" for "failure to translate prior Supreme Court ruling[s] on incitement to imminent lawlessness, into an Act which bans such speech even when, and especially under, the guise of religious expression," (*Id.*); (2) breach of contract,

2

because Article 1, Section 8 of the U.S. Constitution "constitutes a contract between the taxpayer and US government to provide for the common defense," and the "Tucker Act" permits him to sue the United States for breach of such contract; (3) impingement on First Amendment freedom of religious expression, because "[r]eligious doctrine which incites lawlessness against targeted religious groups and 'non-believers' in general cannot be protected under the First Amendment. It cannot be one's 'Freedom of Religion' to take away . . . another's 'Freedom of Religion'"; and (4) breach of oath, because every member of Congress has effectively condoned "illegal incitement to imminent lawlessness, under the guise of religious expression, to . . . limit and stifle religious expression" in "breach of Oath of Office to defend our Constitution, and the rights it provides." (*Id.*).

As relief, he seeks (among other things) "[a] formal declaration of incompatibility between Koranic Sharia Law as specified and directed by the Koran, and US Constitutional Law," and an order that Congress "within 180 days" pass an "Act barring and outlawing Islamic Religious Incitement to Violence and Lawlessness, to at a minimum include" provisions banning, among other things, "164 explicit verses extolling violent Jihad," and "[v]erses of Sharia Law precepts which promulgate, extol, sanction, or justify" slavery, polygamy, pedophilia, lying, violent jihad, death penalty for apostasy, cruelty in punishment, elimination and suppression of women's and the LGBT community's rights, and "[c]ertain other Islamic religious doctrine within the Koran and Hadith that additionally subvert universal human rights and Law and Order." (Doc. 1 at 8). In addition, such legislation should strike and redact "Koranic verses deemed contrary to good law and order" in order to "form and establish a US Federally Sanctioned 'Reformed and Non-

3

Violent' (RNV) Koran and US 'Constitutionally Compatible Islamic Doctrine,'" pre-authorize a National Islamic Registry Program "whereby Muslims publicly declare their affirmation and adherence to RNV Koran in good faith," and withdraw tax-exempt status for mosques "which fail to adopt and endorse the RNV Koran." (*Id.*). To ensure that legislators follow through with this order, Plaintiff asks the Court also to "award judgment against individual legislators" for breaching their oath to uphold and defend the Constitution—which would impose a fine on each of $250,000, as well as removal from office—if they do not "pass[] and support" his proposed law. (*Id.*).

**B.    Screening Procedure**

In enacting the original IFP statute, Congress recognized that "a lititgant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neizke v. Williams*, 490 U.S. 319, 324 (1989)). In 1996, Congress enacted a screening procedure, *see* 28 U.S.C. § 1915(e)(2)(B), which requires that the court review all complaints where the plaintiff is proceeding IFP and *sua sponte* dismiss a case before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Rule 8(a) sets forth the basic federal

4

pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Federal courts hold an independent obligation to examine their own jurisdiction. *U.S. v. Hays*, 515 U.S. 737, 742 (1995). Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that, if a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." There are two ways this Court can obtain jurisdiction over such a case; first, the United States Code provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This statute confers on the federal district courts what is known as "federal question jurisdiction." Second, pursuant to 28 U.S.C. § 1332, diversity jurisdiction arises when the matter is between citizens of different states and the amount in controversy exceeds $75,000.

### C. Analysis and Conclusion

Plaintiff suggests that his case arises under three constitutional sources: (1) Article I, Section 8, Clause 1, (2) Article III, and (3) the First Amendment. None of these support

the exercise of federal question jurisdiction, however, because Plaintiff lacks standing to bring suit, and thus his case is not justiciable.[1]

The doctrine of standing helps ensure that federal jurisdiction extends only to "those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). "Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At a minimum, "standing" entails that plaintiffs surpass three hurdles: (1) they must "have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the conduct complained of" must exist; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citations omitted). The present case lacks all three hallmarks.

Plaintiff does not allege that anyone has attacked him or his synagogue, nor does he allege that he has shouldered the financial burden in supplying his synagogue with "security for fear of violence and the real possibility that violence will occur." (Doc. 1 at

---

[1] Though Plaintiff's complaint also fails to state a claim for which relief can be granted, I rest my opinion on his lack of standing because, as the Supreme Court instructs, justiciability questions must be resolved before determining the existence of a cause of action. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).

5). The injury he seeks to redress is an amorphous fear of hypothetical attack—this does not qualify as an injury in fact. *See, e.g.*, *Hange v. City of Mansfield, Ohio*, 257 F. App'x 887, 891 (6th Cir. 2007) ("[T]he mere subjective fear that a plaintiff will be subjected . . . to an . . . illegal action is not sufficient to confer standing."); *cf. White v. U.S.*, 601 F.3d 545, 553-54 (6th Cir. 2010) ("The plaintiffs' allegations of potential false prosecution amount to a claim that, if they transport or sell chickens across state lines for non-fighting purposes and if they are stopped by law enforcement authorities, the authorities may misinterpret the plaintiffs' intent and may wrongly prosecute them. . . . [This] risk remains too remote to confer standing.").[2] Even if it did, such injury is not fairly traceable to the United States's failure to ban or censor various Islamic texts, and thus no causal connection would exist between the injury and the conduct complained of. *See, e.g.*, *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41 ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the *independent action of some third party* not before the court." (emphasis added)). Further, none of Plaintiff's requested remedies would likely redress his alleged injury. Banning text and converting it into something more palatable to Plaintiff would not practically affect

---

[2] In suing the United States for breach of (the social) contract under Article I, Section 8, Plaintiff also essentially contends that his status as a taxpayer confers an injury in fact on these facts. It does not. *See, e.g.*, *Doremus v. Board of Ed. of Borough of Hawthorne*, 342 U.S. 429, 435 (1952) ("This Court has held that the interests of a taxpayer in the moneys of the federal treasury are too indeterminable, remote, uncertain and indirect to furnish a basis for an appeal to the preventive powers of the Court over their manner of expenditure.").

access to the original texts by the very international terror organizations Plaintiff fears, nor would it eradicate the ideas fueling them.

Perhaps more importantly, Plaintiff's requested remedies are unconstitutional in a variety of ways. On one level, the separation of powers disallows his requested remedies. *Accord, e.g.*, *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 797 (6th Cir. 1996) ("Federal Courts do have jurisdiction and power to pass upon the constitutionality of Acts of Congress, but we are not aware of any decision extending this power in Federal Courts to order Congress to enact legislation. To do so would constitute encroachment upon the functions of a legislative body and would violate the time-honored principle of separation of powers of the three great departments of our Government."); *Joseph Skillken & Co. v. City of Toledo*, 528 F.2d 867, 878 (6th Cir. 1975) ("The enactment of legislation is not a ministerial function subject to control by mandamus, prohibition or the injunctive powers of a court."). *See generally* U.S. Const. art I, § 2, cl. 5 (delegating the "sole Power of Impeachment" to the House of Representatives); *id.* § 3, cl. 6 (delegating the "sole Power to try all Impeachments" to the Senate); *id.* art. II, § 4 (requiring "all civil Officers of the United States" to be "removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors"). In addition, the law he proposes would blatantly violate the First Amendment, as it would *require* Congress to "make [a] law . . . prohibiting the free exercise" of a religion—namely, Islam—*and* "respecting an establishment of religion"—that is, a "US Federally Sanctioned 'Reformed and Non-Violent' (RNV) Koran and US 'Constitutionally Compatible Islamic Doctrine' . . . ." (Doc. 1 at 8); *see McCreary County, Ky. v. American Civil Liberties Union*

*of Ky.*, 545 U.S. 844, 882-83 (2005) (O'Connor, J., concurring) ("Government may not coerce a person into worshiping against her will, nor prohibit her from worshiping according to it. It may not prefer one religion over another . . . ."). Although I do not doubt Plaintiff's fear is genuine, I must remind him that "[f]reedom of conscience and freedom to adhere to such religious organization or form of worship as the individual may choose cannot be restricted by law." *Cantwell v. State of Connecticut*, 310 U.S. 296, 305 (1940); *cf., e.g.*, *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 794 (2011) ("No doubt a State possesses legitimate power to protect children from harm, . . . but that does not include a free-floating power to restrict the ideas to which children may be exposed."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."); *Roth v. U.S.*, 354 U.S. 476, 506 (1957) (discarding a national "blanket ban" on the novel *Lady Chatterley's Lover* as a "truly great" danger to "free thought" and "violative of both the letter and spirit of the First Amendment.").

For the reasons discussed above, Plaintiff lacks standing and cannot pursue his case in this Court. Therefore, **IT IS RECOMMENDED** that the case be *sua sponte* **DISMISSED**.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 24, 2017                           S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Ross LeVay at 106 S. VanBuren St., Bay City, MI 48708.

Date: February 24, 2017                    By s/Kristen Castaneda
                                           Case Manager